### Jacobs & Co. *v.* Shorey & Mathes.

Where two or more jointly attempt to commit a fraud, the declarations of one of them, made during the progress, and in the prosecution of the joint undertaking, or in explanation of acts done in furtherance of it, are evidence against the others.

A letter of credit, addressed to a third party by one of the defendants, was admissible, as tending to show the means in fraudulently obtaining the goods of the plaintiffs in prosecution of their general fraudulent purpose, and to show collusion and a conspiracy on the part of the defendants.

Proof of a custom of merchants will be received, when shown to be reasonable in itself, and so well established, and uniformly acted upon, and so well settled, as to raise a fair presumption that it is generally known by all contracting under its operation.

The relation of a witness to a party in a cause, whether of peculiar friendship or hostility is a fact material to the issue, and may be shown, either by the testimony of the witness himself, or by other evidence.

When goods are obtained by fraud, and the vendors sue for the price, thus affirming the original contract, they will recover only what was due at the commencement of their suit.  If the verdict of the jury embraces a larger sum, a remittitur may be entered.

*Hatch* for plaintiff.

*Wheeler, Frink & Hackett* for defendants.

Assumpsit on two notes, and for money had and received, and for goods sold.  The defendants were A. J. Shorey and N. F. Mathes. Shorey was defaulted, and was a witness for plaintiffs.  The principal question was, whether Mathes was a partner with Shorey, March 8th and April 12, 1866, when Shorey bought goods of plaintiffs in New York, and gave therefor the notes in suit.  Shorey brought the goods to Portsmouth, and put them in a store, and failed without having paid for them.

He bought them, and gave the notes, in his own name, plaintiffs understanding that they were selling to him alone.   Plaintiffs introduced evidence tending to show that Shorey went from Portsmouth to New York to buy goods in pursuance of a secret and fraudulent understanding between Shorey and Mathes that the goods, when brought to Portsmouth, should be disposed of without paying for them, and that the profits of the enterprise should be divided between them, without disclosing Mathes as a partner.   Subject to defendants' objection, plaintiffs were allowed to prove by Shorey that, at the same times, he bought goods of other persons in New York, which were sent to the same store in Portsmouth.

Subject to defendants' objection, plaintiffs were allowed to prove by Shorey that he received from Mathes and carried to New York, and presented to the firm to which it was addressed, the following letter :

Portsmouth Feb 21st 1866

Mess Townsend, Clinch & Dike

Gents

The bearer Mr. Shorey from our city visits New York to purchase Tea Tobacco Cegars &c as he is about starting a store for the jobing of these articles.

I have had dealings with him for the last two years to queight a large amount & have always found him promt in his buysness with me & I should not hesetate to credit him for a reasonable amount.

Yours &c

N. F. MATHES.

Plaintiffs introduced evidence tending to show that some of the goods in said store passed into the possession of Mathes, and that in being removed from one store to another, they were carried over a very long and circuitous route.   Mathes, being asked by plaintiffs on cross-examination, about the circuitous route, answered that he did not know how the fact was in that instance, and stated, not in answer to any question, that it was not an uncommon thing for him and other merchants in Portsmouth and elsewhere, to have goods sent to their stores by long, circuitous routes, even when they bought the goods at the stores of their near neighbors ; and he was proceeding to give the reasons for the custom, when he was stopped by plaintiffs' counsel and not allowed to finish his statement on that subject.   Defendants' counsel asked him to state his own custom as to circuity of route, the general custom, *and the reasons* therefor.   The court excluded the evidence, and defendants excepted.

Defendants offered to prove the same custom at Manchester ; the court excluded the evidence, and defendants excepted.   Defendants offered to prove by one Prescott, a truckman of Portsmouth, that he was accustomed to haul goods for others in the same way ; the court excluded the evidence, and defendants excepted.

Subject to defendants' exception, plaintiffs were allowed to put ques-

tions to one Mitch on cross-examination, in answer to which, he testified—

"I sold my house in Portsmouth, some two years ago, to Holmes, but when I came to sign the deed I found that Mathes was a purchaser with Holmes; I didn't owe large sums in New York; I owe one man in New York about $1600; think I sold the house before I contracted that debt; I received $800 for the house, there being a $200 mortgage on it; I moved to Kingston a year ago last Spring; the bargain was that I was to stay in the house a year after I sold it, and I occupied or let it the year; didn't receive the rent after the year was out; I left here October, 1866."

One of the notes declared upon was not due at the commencement of this action. The court ruled that if the goods were bought by Shorey, in pursuance of the secret and fraudulent understanding, as claimed by plaintiffs, plaintiffs might disregard the note and recover for the goods for which it was given, to which ruling defendant excepted.

The verdict was for plaintiffs, and defendants moved to set it aside.

Case reserved.

NESMITH, J.    To maintain this action, it becomes necessary for the plaintiffs to establish the fact that Mathes shared in the profits of the sale of the goods from them to Shorey, or that Mathes and Shorey were partners in that transaction, upon the ground that where goods are obtained for the use of a firm by means of the fraud of one its members, the other partner, by receiving and participating in the use or sale of the goods, will be held to have adopted the fraudulent act of him who obtained them, and will be placed in the same situation in reference to the rights of the vendors of the goods, as if he had directed his partner to procure the property, or had originally concurred with him in the transaction.

In this way, partnerships may grow out of transactions or relations in which the word partnership has not been uttered. If there be such a joinder or union of interest and action as the law considers as the *equivalent* of partnership, or as constituting it, it will give to the persons engaged in it all the rights, and lay upon them all the responsibilities, and also give to third parties dealing with them, all the remedies which belong to a partnership. Parsons on Partnership, 9; *Hawkins* v. *Appleby*, 2 Sanford, 421.

In general, conversations, assertions, or admissions, and acts tending to show that parties are partners, and have that joint interest in the particular business which makes them liable as partners, will often have that effect, although such evidence might be quite insufficient to prove a partnership, as between themselves, when no third persons are interested in the question. Parsons on Part. 122.

Where there is doubt, whether a party purchasing goods bought them for himself alone, or for the benefit of another as partner, to prove the latter point, evidence may be offered of acts and declarations, sub-

sequent to the sale and delivery of the property.   Hilliard on Sales, 82.

So evidence as to the character of the goods purchased, the ability or insolvency of the purchaser at the time, or whether an inordinately large quantity of goods was purchased in proportion to the party's apparent means of payment, or the credit given, or whether forced sales are made at inadequate prices, before the expiration of the credit given, or whether there may have been any secret or fraudulent transfer of the goods, are all open and legitimate subjects of inquiry, as bearing upon the sale, and the probable intent of the parties thereto.   *State* v. *Johnson,* 33 N. H. 457 ;  Parsons on Part. 128.

Upon the question, whether a purchase was fraudulently made by a vendee in anticipation of his insolvency, evidence tending to show that he fraudulently purchased other and similar goods, about the same time, by means of similar false pretences, may be admitted, having the tendency to show the fraudulent intent or conspiracy in the case under consideration.   Acts and declarations, showing a fraudulent purpose, if connected in point of time, are admissible, as throwing light upon the general object of the party, though they do not relate to the property or transaction in question.   *Hills* v. *Hart,* 18 N. H. 605 ;  *Lee* v. *Lamprey,* 43 N. H. 15 ;  *Blake* v. *White,* 13 N. H. 267 ;  *Angier* v. *Ash,* 26 N. H. 109.

In this case, the main question is, whether the acts of Shorey were within the scope of a general design to share the profits of the enterprise with Mathes, or whether the goods were obtained on his own credit, or for his own private use or purposes, and we think the jury might properly weigh the fact, whether the letter of credit to Townsend and others might not have been designed as means in obtaining money from the plaintiffs in prosecution of their general fraudulent purposes.   The false pretence alluded to in *Lee* v. *Lamprey,* was a *letter* addressed by one of the partners to another, tending to show fraud and collusion in the parties.   Upon the aforesaid legal principles, the facts stated in the case appear to be sufficient, with or without the letter, to show a fraudulent purpose in both Mathes and Shorey, in procuring the goods in question, so as to render them liable as partners.   *Bradley* v. *Obear,* 10 N. H. 477 ;  *Allison* v. *Matthew,* 3 Johnson, 235.   The letter in question may also be properly used as evidence before the jury, as an act or declaration of one member of a firm, and properly within the scope of the partnership business, and to charge the firm whether honestly or dishonestly transacted or said.   *Peirce* v. *Wood,* 23 N. H. 519 ;  *Webster* v. *Stearns,* 44 N. H. 502.   Such evidence may be received as one of a series of acts, which all together indicate a fraudulent design to obtain the goods without paying for them.

2.   The plaintiffs having introduced evidence tending to show that some of the goods in Shorey's store passed into the hands of Mathes, and that, in being removed from one store to another, they were conveyed by and through a long and circuitous route, the defendants were not permitted by the court to show the existence of a usage or custom among the merchants of Portsmouth and Manchester, or elsewhere, to have their goods sent to their stores by long and circuitous routes, when

purchased at the stores of near neighbors. We think the court properly rejected this kind of testimony. The general presumption of law on this subject would naturally be that merchants, in the transportation of their goods, will be governed by their true and essential pecuniary interests. That route will be preferred, other things being equal, which is the shortest and cheapest, requiring the least expenditure of money.

In general, a custom of merchants must be reasonable in itself, well known, and so well established, and uniformly acted upon, and so well settled, as to raise a fair presumption, that it is generally known by all contracting under its operation. 1 Greenleaf's Evid. secs. 292, 293, and notes; *Foye* v. *Leighton*, 22 N. H. 75; *Rogers* v. *Allen*, 47 N. H.; *Homer* v. *Dorr*, 10 Mass. 29; *Shorey* v. *Bliss*, 6 Met. 393.

The law will not permit us to presume that the honest merchants and business men of any city in our State would prefer to transport their goods by a long and circuitous route, when they had an opportunity to use one more direct, of equal fitness for travel, and requiring a less outlay for freight. We think it would be suspicious, absurd, and unreasonable to assume the existence of such a usage, and it would be in violation of the common experience of mankind, as well as the familiar maxim of law, " *Ad vana et impossibilia lex non cogit.*"

The defendants were rightfully permitted by the court otherwise to explain the reasons for their proceedings, and the jury would be able to determine whether their conduct was influenced by honest motives or not.

The cross-examination of Mitch, the witness for defendants, was admissible, within the discretion of the judge who tried the cause, for the purpose of testing the character and bias of the witness, although the matter by him disclosed was not material to the issue of the parties. The relation of a witness to a party in a cause, whether of peculiar friendship or hostility, is a fact material to the issue, and may be shown, either by the testimony of the witness himself, or by other evidence. *Drew* v. *Wood*, 26 N. H. 363; *Martin* v. *Farnham*, 25 N. H. 195.

It has been held, that where goods are obtained by fraud, the vendor may treat the sale as a nullity, and reclaim them at once, while they are in the possession of the vendee, though the term of credit has not expired. Hilliard on Sales, 309; *Seaver* v. *Dingley*, 4 Greenleaf's Rep. 306. But whether he can sue for the price until the agreed time of credit has expired, is a point upon which there is some conflict of authority. *Dodge* v. *Waterman*, 36 N. H. 188.

In the case before us, the plaintiffs have elected to affirm the original contract, so far as to bring their action on both notes, against both defendants, as partners, both being found by the jury, joint conspirators, and implicated in the attempt to defraud them. The plaintiffs, in this way, obtain a legal remedy against both defendants, they having been found chargeable as partners in the fraudulent transaction.

It appears to us, that the plaintiffs, under the prevailing practice, as established in this State, having commenced their action upon the contract, must be bound to adhere to its terms, so far as to give the credit,

originally given by the partners. Therefore the plaintiffs can have judgment only upon the note which was due at the commencement of their action. *Weeks* v. *Robie*, 42 N. H. 313; *Coolidge* v. *Bridgman*, 1 Met. 551. Plaintiffs may enter a remittitur for the amount of the second note which is now embraced in their verdict. *Sanborn* v. *Emerson*, 12 N. H. 58.

Plaintiffs took judgment for the amount of their first note.